[No. B025088. Second Dist., Div. Two. May 27, 1988.]

JAMES SPRADLIN, Plaintiff and Appellant, v.
DONALD COX et al., Defendants and Respondents.

## COUNSEL

Dennis A. Fischer and Alan S. Yochelson for Plaintiff and Appellant.

Goodheart & Wakcher, Michael R. Goodheart and Brandon K. Tady for Defendants and Respondents.

## OPINION

**COMPTON, J.**—Plaintiff James Spradlin commenced this personal injury action against defendants Donald Cox and D.C. Faller to recover damages for loss of his left thumb. Concluding that plaintiff's exclusive remedy was under the state's Workers' Compensation Act, the trial court granted defendants' motion for summary judgment and dismissed the complaint. This appeal follows. We reverse.

Plaintiff's injuries were incurred on July 27, 1984, when his left thumb was severed by a power saw operated by his brother-in-law, defendant Cox. At the time, both men were attempting to rebuild a stairway at an apartment complex managed by Cox's employer, Faller & Associates. Cox himself had been employed as a carpenter and handyman by Faller for approximately six months before the accident and usually worked alone. On the day in question, however, plaintiff had accompanied him to the jobsite and was assisting in the construction of several wooden frames for the stairway. During that process, Cox directed plaintiff to hold a "2 by 12" board steady on sawhorses while he cut it into diagonal pieces using the power saw. Without warning, the saw struck a knot in the wood causing Cox to lose control and fall backwards. As he attempted to regain his balance, the saw's mechanism engaged and severed plaintiff's thumb.

Plaintiff's complaint alleged in pertinent part that "Defendant Donald Cox with the express authority and consent of defendant D.C. Faller & Associates did request plaintiff James Spradlin to assist him while defendant was working on said construction site. At all times mentioned herein said defendants were the agent and employees of the other and were acting within the scope of such agency and employment while performing the acts

complained of herein." In support thereof, plaintiff testified during his deposition that for several months prior to the accident he had been unemployed and residing with his sister and brother-in-law. Without funds, he owed Cox approximately $175.00 in past due rent. On July 26, 1984, Cox warned plaintiff that unless he worked off the arrearage he would "be in the street" and forced to find another place to live. Although plaintiff had little or no construction experience, he was told by Cox that Faller had given him permission to "bring somebody to help him at work." Despite this arrangement plaintiff did not expect to receive any payment for providing such assistance other than to work off his arrearage.

At his deposition, however, Cox specifically denied suggesting that plaintiff work with him in exchange for extinguishing the debt. To the contrary, he testified that it was plaintiff who originally proposed the idea in order to relieve the "boredom" of staying home alone. As a result, Cox did *not* ask Faller's permission to bring plaintiff to the jobsite. He characterized plaintiff's offer of assistance as nothing more than a favor for which he would not be paid. When asked whether he had the authority to retain such help, Cox replied that he did not know.

Both Cox and Faller moved for summary judgment on the ground that plaintiff's damage action was barred as a matter of law by Labor Code section 3601. That statute essentially provides that where "the conditions of compensation"[1] exist, an injured employee is limited to workers' compensation and is precluded from bringing a civil action against his employer. Relying solely on plaintiff's deposition testimony, defendants argued that because plaintiff "agreed to go with Cox to the jobsite to help Cox do the job and thereby work off his back rent" and knowing that "Faller consented to have employee Cox bring a helper to the jobsite," an "implied contract of employment" was created between plaintiff and Faller pursuant to Labor Code section 3351. Plaintiff, of course, denied the existence of an employ-

---

[1] Labor Code section 3600 provides in part:

"Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . in those cases where the following *conditions of compensation* concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence. . . ." (Italics added.)

As relevant here, section 3601 provides:

"(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment . . . ."

ment relationship on the ground that, according to Cox's testimony, he had voluntarily assisted his brother-in-law without compensation. The trial court, however, agreed with defendants' position and granted the motion for summary judgment.

Urging us to reverse and remand the case for further proceedings, plaintiff contends that the evidence submitted in conjunction with the motion raised a material issue of fact as to whether he was Faller's employee at the time of the accident. We agree.

■ The purpose of the summary judgment procedure is to discover, through appropriate supporting and opposing papers, whether the parties possess evidence requiring the weighing procedures of a trial. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177]; *Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 361-362 [212 Cal.Rptr. 395].) The rules are well known. A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd., (c).) ■ Although the issues are framed by the pleadings (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203]), the motion must be decided upon admissible evidence in the form of affidavits, declarations, admissions, answers to interrogatories, depositions, and matters subject to judicial notice. (Code Civ. Proc., § 437c, subd. (d).) ■ A defendant moving for summary judgment has the burden of establishing that the action is without merit; a factual showing negating all causes of action upon all theories is required. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 666 [150 Cal.Rptr. 384, 12 A.L.R. 4th 27].)

■ Issue finding rather than issue determination is the pivot on which summary judgment law turns. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) ■ "The matter to be determined by the trial court on a motion for summary judgment is whether facts have been presented which give rise to a triable factual issue. The court may not pass upon the issue itself. ■ Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue of fact. The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial

method of determining facts." (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271]; see also *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 627 [193 Cal.Rptr. 600].)

■ On review of a grant of a motion for summary judgment, our task is to determine the validity of the ruling as a matter of law regardless of the reasons that may have motivated the trial court. (*Lombardo* v. *Santa Monica Young Men's Christian Assn.* (1985) 169 Cal.App.3d 529, 538, fn. 4 [215 Cal.Rptr. 338].) ■ Although on appeal all intendments are in favor of the party who opposed the motion, an order granting summary judgment will not be reversed absent a manifest abuse of discretion. (*Rubio* v. *Swiridoff* (1985) 165 Cal.App.3d 400, 403 [211 Cal.Rptr. 338].)

With these principles in mind, we turn to the dispositive issue on this appeal, to wit, whether the trial court properly found on the evidence before it the existence of an employer-employee relationship.

■ Under the workers' compensation scheme, an employee's remedy against an employer for a work related injury is, as a general rule, exclusively limited to the benefits provided by statute. (*Gigax* v. *Ralston Purina Co.*. (1982) 136 Cal.App.3d 591, 597 [186 Cal.Rptr. 395].) ■ As such, an employer-employee relationship must exist in order to bring the Workers' Compensation Act into effect. (*County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 396 [179 Cal.Rptr. 214, 637 P.2d 681].) There is, however, no special test, fact, or circumstance which conclusively defines "employee" for all purposes. (*Anaheim General Hospital* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.App.3d 468, 472 [83 Cal.Rptr. 495].) Whether or not an employment relationship exists "usually is one of fact for a determination by the trier of fact. This is particularly true where the facts as to the employment relationship are in conflict. [Citations.] . . . 'The question of whether a worker is an employee within the meaning of the Compensation Act . . . is referred to as a question of mixed law and fact to be proved like any other question. [Citations.] It is a question of fact . . . where the facts are in dispute. It becomes a question of law only when but one inference can reasonably be drawn from the facts.' " (*Gigax* v. *Ralston Purina Co., supra,* 136 Cal.App.3d at pp. 598-599.)

Labor Code section 3351 broadly defines "employee" as "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written. . . ." "Although it has been held that a volunteer who renders wholly gratuitous services is not an employee unless special statutory provision is made for his undertaking

[citations], it has also been held that compensation need not be in the strict form of wages [citations]." (*Jones* v. *Workman's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 124, 129 [97 Cal.Rptr. 554].) ▮▮▮ The form of remuneration is not controlling, and "[a] court will look through form to determine whether consideration has been paid for services." (*Van Horn* v. *Industrial Acc. Co.* (1963) 219 Cal.App.2d 457, 466 [33 Cal.Rptr. 169].)

▮▮▮ Although a person who renders service to another is presumed to be an "employee" (Lab. Code, § 3357), that presumption will be overcome if the essential contract of hire, express or implied, is not present. (*Parson* v. *Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 629, 638 [179 Cal.Rptr. 88]; *Jones* v. *Workmen's Comp. Appeals Bd., supra,* 20 CalApp.3d at p. 128.) "The traditional features of an employment contract are (1) consent of the parties, (2) consideration for the services rendered, and (3) control by the employer over the employee. [Citation.] Although these common law contract requirements are not to be rigidly applied, a consensual relationship between the worker and his alleged employer nevertheless is an indispensable prerequisite to the existence of an employment contract under Labor Code section 3351. [Citation.]" (*Parsons* v. *Workers' Comp. Appeals Bd., supra,* 126 Cal.App.3d at p. 638.)

▮▮▮ Having reviewed the record in light of the foregoing principles, we think it clear that the factual conflict evidenced by the parties' deposition testimony precluded the trial court from granting summary judgment. As we see it, defendants simply failed to prove, at least at this stage of the proceedings, that the Workers' Compensation Act provides the exclusive remedy available to plaintiff. (See *Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91, 96-97 [151 Cal.Rptr. 347, 587 P.2d 1160].)

In support of their argument that there was an implied contract of employment between plaintiff and Faller, defendants relied almost exclusively on plaintiff's testimony (1) that Cox had informed him shortly before the accident that "he had permission to bring somebody to help him at work" and (2) that he was assisting Cox in order to work off his past due rent. Cox, however, specifically denied ever obtaining such permission and asserted that plaintiff had volunteered to help him as a personal favor. Attempting to brush aside this obvious conflict, defendants maintain that Cox's testimony is irrelevant because they have chosen not to contest the presumption of employment set forth in Labor Code section 3357.[2] We think not. ▮▮▮ While it may be true that the provisions of the act are to be liberally construed in favor of awarding benefits even where it may be to the advan-

---

[2] Labor Code section 3357 provides: "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded [under the Workers' Compensation Act], is presumed to be an employee."

tage of a particular plaintiff to avoid them and seek a remedy at law (see *Machado* v. *Hulsman* (1981) 119 Cal.App.3d 453, 455-456 [173 Cal.Rptr. 842]; *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 506 [125 Cal.Rptr. 872]; *Scott* v. *Pacific Coast Borax Co.* (1956) 140 Cal.App.2d 173, 177-178 [294 P.2d 1039]), courts generally are more exacting in requiring proof of an employment relationship when such a relationship is asserted as a defense by the employer to a common law action. (*Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 779, fn. 8 [100 Cal.Rptr. 377, 494 P.2d 1]; see also 1C Larson, Workmen's Compensation Law (1986) § 47.42(a), p. 8-347.) This is because to " 'thrust upon a worker an employee status to which he has never consented . . . might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.' " (*State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1976) 59 Cal.App.3d 647, 653 [130 Cal.Rptr. 831].)

Even were we to consider only plaintiff's testimony we could not conclude as a matter of law that the evidence established the existence of an employer-employee relationship. Although Cox may have obtained Faller's permission to bring plaintiff to the jobsite as an assistant, there has been no showing that the giving of such permission was intended to create a contract of hire between the parties. ▮▮ ▮▮▮▮ This is especially true in light of plaintiff's statement that he agreed to work with Cox in order to satisfy a purely personal obligation and not to benefit Faller.[3] We also note that such arrangements between relatives and family members generally are not found to fall within the employment context. (See 1C Larson, Workmen's Compensation Law, *supra*, § 47.41(b), p. 8-337.) Under the circumstances, we are unprepared to hold that plaintiff knowingly entered into an employment relationship.

We further reject the argument that plaintiff, by pleading and attempting to prove Faller's vicarious liability under the doctrine of respondeat superior, has alleged facts which bar his common law action for negligence as a matter of law.

▮▮ An employer's liability without fault for the acts of his employees is imposed by Civil Code section 2338, which provides in relevant part that "a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts

---

[3] Moreover, if Cox is to be believed, Faller was totally unaware that plaintiff was working at the jobsite at the time of the accident. It thus appears that Faller had no right to control the manner in which plaintiff performed his work. Such a right has been held a "preeminent factor" in determining the existence of the employer-employee relationship. (See *Gigax* v. *Ralston Purina Co., supra,* 136 Cal.App.3d 591, 599; see also *Grant* v. *Woods* (1977) 71 Cal.App.3d 647, 653 [139 Cal.Rptr. 533].)

committed by such agent in and as a part of the transaction of such business, . . ." This statute has long been held to reflect the common law doctrine of respondeat superior. (*Bk. of Cal.* v. *W. U. Tel. Co.* (1877) 52 Cal. 280, 287-289.) ▇▇ Analytically, the question of whether a tort is committed within the course of employment turns on whether (1) the act performed was either required or incident to the employee's duties, or (2) the employee's misconduct could be reasonably foreseen as an outgrowth of his duties. (*Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139 [176 Cal.Rptr. 287]; *Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 520 [154 Cal.Rptr. 874].)

Here, defendants contend that if plaintiff's proof establishes what is alleged in the complaint, to wit, that Cox was acting within the scope of his employment and with his employer's consent when he retained plaintiff's assistance, the evidence will demonstrate the existence of an employment relationship between Faller and plaintiff as a matter of law. We disagree. Defendants wrongly focus on the events which culminated in plaintiff being brought to the jobsite, rather than the alleged negligent act which gave rise to the injuries. ▇▇ Whether or not Cox possessed the authority to "hire" plaintiff is irrelevant. (See *Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 969 [227 Cal.Rptr. 106, 719 P.2d 676].)[4] ▇▇ What is relevant, however, is whether Cox was acting within the scope of his employment when the accident occurred. At a minimum, this means that liability may not be imposed unless a "nexus" exists between the alleged wrongful act and Cox's employment. Plaintiff, of course, bears the burden of proof on this issue. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755].)

▇▇ The instant case does not turn on whether Cox was acting within the scope of his employment when he requested that plaintiff assist him at the jobsite. Although the complaint contains such an allegation, the inferences which may flow therefrom do not demonstrate the existence of an employment relationship between plaintiff and Faller as a matter of law.

---

[4] In *Perez,* an employer was held vicariously liable for injuries to an unauthorized passenger on a tractor being used by an employee to disk the employer's fields. In so holding, the court reasoned: "As long as it is clear that at the time of the injury the employee was following his employer's instructions to disk the orchard, the fact that he was not authorized to take a passenger is immaterial. . . [P]roof of an employer's authorization of his employee's act is not necessary to show that the act was within the scope of employment. [Citation.]" (*Ibid.*) The court also concluded that an employer will be liable for the unauthorized negligent acts of an employee committed in the course of employment, even without proof that the employee's acts benefited the employer. (*Ibid.*)

Based upon our reading of *Perez,* we think it clear that Cox's admitted lack of authority to hire plaintiff, and his failure to advise Faller of his intent to use him as an assistant, is no bar to recovery against Faller under the doctrine of respondeat superior.

Contrary to the argument advanced by defendants, the facts necessary to plead and prove Faller's vicarious liability under the doctrine of respondeat superior are not the same as those which would establish that plaintiff was Faller's employee at the time of the injury.

In any event, the conflict evidenced by the record convinces us that a triable issue remains as to the nature of the relationship that existed between the parties at the time of the accident. The question of whether plaintiff was a volunteer or employee cannot be answered on the basis of the deposition testimony before the trial court at the time of its ruling. We must conclude, therefore, that the court abused its discretion in granting defendants motion for summary judgment. It may be that on remand summary judgment will still be a proper method of disposition if additional evidence, such as Faller's deposition, clearly establishes the conditions of compensation.

The judgment is reversed and the case remanded to the trial court for further proceedings consistent with the views expressed herein. Defendants to bear costs on appeal.

Roth, P. J., and Gates, J., concurred.