Filed 4/18/23  Frank v. EVOLV Integrated Technologies Group CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JAMES JOSEPH FRANK, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> EVOLV INTEGRATED TECHNOLOGIES GROUP, INC. et al., <br><br> Defendants and Respondents. | B314796 <br><br> (Los Angeles County Super. Ct. No. BC722025) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Amezcua-Moll & Associates and Rosemary Amezcua-Moll for Plaintiff and Appellant.

Kull + Hall, Robert F. Kull and Kevin P. Hall for Defendants and Respondents KBLED, Inc., All-In Energy Group LLC and Kenneth Bruce Shaevel.

————————————

After EVOLV Integrated Technologies Group, Inc. terminated his employment, James Joseph Frank sued, among others, EVOLV; Kenneth Bruce Shaevel, EVOLV's chief executive officer; KBLED, Inc., a company owned in part by Shaevel; and All-In Energy Group, LLC, an investor in EVOLV, for wrongful termination, breach of contract, unlawful retaliation and unfair business practices. The trial court sustained demurrers and dismissed Frank's causes of action for wrongful termination and unfair business practices. The court then granted the motion for summary judgment filed by Shaevel, KBLED and All-In as to the remaining claims, ruling there was no evidence to support the claims that Shaevel, KBLED and All-In were liable to Frank under joint employer or alter ego theories. We affirm the judgment entered in favor of Shaevel, KBLED and All-In after the claims involving the remaining defendants were resolved.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Formation of EVOLV*

In May 2017 INESA International Corp., wholly owned by Feilo International Trade Co., and KBLED entered a joint venture agreement to form E-Street Technology, Inc., to market and sell LED lighting products supplied by INESA. INESA agreed to make an initial capital contribution of $700,000 for a 70 percent ownership interest and to provide a $1.5 million line of credit to E-Street. KBLED agreed to make an initial capital contribution of $100,000, followed by a $200,000 contribution by December 31, 2019, for 30 percent of E-Street. The agreement provided that INESA would appoint three board members, KBLED would appoint two board members, and Shaevel would serve as chief executive officer. Shaevel, as president of KBLED,

2

signed the joint venture agreement, as did Qi Li, chief executive officer of INESA. The parties renamed the newly formed company EVOLV.

Separately, in lieu of KBLED investing in EVOLV and to shield KBLED from the risks of a minority ownership interest in a start-up company, Shaevel, Bruce Merino (the majority shareholder of KBLED) and Jamie Shaevel (Shaevel's son) formed All-In to hold the stock in EVOLV and to make KBLED's required investment in the new company. Shaevel owned 40 percent of All-In and was its president.

In June 2017 INESA and All-In entered into a shareholders' agreement for EVOLV. The shareholders' agreement provided it superseded any conflicting terms in the joint venture agreement. The shareholders' agreement defined "Corporation" as EVOLV, its successors, any surviving or resulting entities following a merger or a consolidation and "any entity controlled by or under common control with the Corporation." "Shareholder" was defined as the parties to the agreement and any "permitted transferee" who acquired shares subject to the provisions of the agreement. Li, as president of INESA, and Shaevel, as president of All-In, signed the shareholders' agreement.

Shaevel and Merino, appointed by All-In, and Li and two others appointed by INESA were named directors of EVOLV.

INESA made its full initial contribution to EVOLV. Rather than a $100,000 contribution from All-In, Shaevel and Jamie Shaevel each contributed $50,000 from their personal bank accounts directly to EVOLV. Shaevel explained they made those payments because "[a]s a partner of All-In, we agreed to fund EVOLV." Shaevel and/or KBLED also paid for some marketing

expenses for EVOLV. All-In never provided any funding to EVOLV.

2. *Frank's Employment with EVOLV*

Frank and EVOLV entered a written employment agreement, and Frank began working as EVOLV's sales director for national accounts beginning July 1, 2017. The agreement defined "Company" as "EVOLV Integrated Technologies Group Inc." Shaevel signed the agreement on behalf of EVOLV as its president and chief executive officer. The agreement outlined Frank's duties, which included providing reports to the president or the board about sales activities and results and entering contracts with customers for LED lighting products. Section 9 detailed the bases for termination of Frank's employment, which included the failure to meet sales projections and gross negligence or willful misconduct resulting in material harm to EVOLV. The agreement provided Frank with 30 days to cure any failure to meet sales projections or to perform the obligations of his job.

On January 4, 2018, approximately six months after Frank began working at EVOLV, Shaevel emailed Frank requesting a meeting to discuss a lack of sales and issues relating to the cost of sales and Frank's expense reports. On January 17, 2018 Frank was suspended based on concerns that he was not acting in the best interest of the company. Five days later EVOLV's board of directors terminated Frank's employment. According to the termination letter, signed by Shaevel, Frank "inappropriately and secretly acted to get the President and CEO (me) terminated and to form another company" to handle sales; failed to submit "truthful and reasonable expense reports"; failed to make sales and lacked accountability for his daily activities; conspired with

4

other employees "to misappropriate and disseminate confidential information about another company in which I am an owner"; and made defamatory comments about company personnel.

### 3. *Frank's Lawsuit and Operative Complaint*

Frank filed his original complaint on September 18, 2018, naming as defendants EVOLV, Shaevel, KBLED, All-In, INESA and Feilo, and alleging causes of action for wrongful termination, breach of written contract, retaliation in violation of Labor Code section 1102.5 and unfair business practices in violation of Business & Professions Code section 17200 et seq. Frank's wrongful termination and unfair business practices causes of action were dismissed after the trial court sustained the defendants' demurrers. Following several amendments, Frank filed a fourth amended complaint in March 2021 alleging causes of action against the defendants for breach of written contract and retaliation in violation of Labor Code section 1102.5.

As alleged in the operative pleading, Frank and EVOLV entered into a written agreement for employment on July 1, 2017, which EVOLV breached on January 22, 2018 by terminating him without cause. Frank further alleged the defendants retaliated against him because he and a coworker, Sam Bernal, "complained of harassment by Shaevel" and "also complained of what they believed to be embezzlement (violation of Penal Code 503)." For both causes of action, Frank summarily alleged that "each and every Defendant acted in concert with each other, [and] was the joint employer of Plaintiff and the alter ego of each other."

5

4. *The Motion for Summary Judgment*

Shaevel, KBLED and All-In moved for summary judgment in December 2020.[1]  They argued the undisputed evidence established they were neither joint employers of Frank nor alter egos of EVOLV.  Accordingly, they argued, they could not be liable for any breaches of the employment contract or any retaliation against Frank.  They further argued, if a triable issue of material fact existed as to joint employer or alter ego status, there was no dispute that EVOLV terminated Frank with cause pursuant to the employment agreement and no evidence of Shaevel's embezzlement from EVOLV to support Frank's retaliation claim.

Frank opposed the motion,[2] contending Shaevel was his employer because he exercised control over Frank's wages and working conditions.  Frank suggested KBLED and All-In should also be considered his employer because Shaevel was acting on their behalf.  Frank argued disputed material facts existed whether his employment agreement had been breached because he was not given 30 days to cure any issues with his performance and whether the reasons for firing him were pretextual.  In his

---

[1]     Shaevel, KBLED and All-In directed their motion at the then-operative third amended complaint.  While the motion was pending, the parties stipulated to the filing of Frank's fourth amended complaint.  Shaevel, KBLED and All-In then filed a notice correcting the title of their motion to direct it to the fourth amended complaint.

[2]     Frank filed an opposition memorandum with evidence and two supplemental oppositions after further discovery, including taking Shaevel's deposition as KBLED's person most knowledgeable.

declaration in opposition to the motion, Frank stated that Shaevel decided to terminate him because "he was angry that Sam Bernal and I both raised issues about him and what we perceived was embezzlement," including "concerns of inappropriate use of Evolv personnel and resources by Shaevel."

Regarding his alter ego allegations, Frank conceded Shaevel was not the alter ego of EVOLV because Shaevel was not a shareholder of EVOLV, but he contended EVOLV was the alter ego of Shaevel. In support of this claim, Frank argued EVOLV was undercapitalized because only $450,000 of the intended initial $1 million capital contribution had been funded and EVOLV's operating costs exceeded that limited capitalization; Shaevel and Jamie Shaevel had personally funded EVOLV, rather than KBLED, in contravention of the joint venture agreement; All-In was set up so KBLED could "avoid risk"; and EVOLV was dissolved in January 2019 even though all its liabilities had not been paid.

In his opposition separate statement Frank disputed the evidence presented with the moving papers to establish that KBLED and All-In were not the alter egos of EVOLV, that Shaevel, KBLED and All-In were not joint employers of Frank and that Frank was terminated for good cause.

5. *The Trial Court's Ruling*

The trial court held a hearing on June 21, 2021 and issued its decision granting the motion for summary judgment on June 23, 2021.[3] The court ruled Frank failed to present any evidence to support imposition of liability for breach of contract

---

[3] No court reporter was present at the hearing.

or violation of Labor Code section 1102.5 against Shaevel, KBLED or All-In.

The court explained that Shaevel (in his individual capacity), KBLED and All-In did not sign the employment contract and Frank presented no evidence demonstrating they were signatories to the contract or otherwise liable as nonsignatories based on joint employer or alter ego theories. The court acknowledged that Shaevel played a role in hiring and firing Frank and communicating with Frank about his expense reports, but the court determined the undisputed evidence demonstrated Shaevel was acting on behalf of EVOLV as its president, chief executive officer and board member rather than as a joint employer. As to KBLED and All-In, Frank's lone theory was that Shaevel had been acting on behalf of those two companies when dealing with Frank; but, because Shaevel's actions were as a corporate officer of EVOLV and not as a joint employer, Shaevel's other relationships with KBLED and All-In did not create liability for those entities. Regarding alter ego liability, the only evidence submitted by Frank that Shaevel, KBLED and All-In were alter egos of EVOLV was EVOLV's purported undercapitalization. The court found this evidence was insufficient to pierce the corporate veil because it was undisputed that EVOLV had received $800,000 (not $450,000 as Frank contended) in initial funding and the remaining $200,000 was not due until December 31, 2019, by which time EVOLV had already been dissolved.

6. *Trial of INESA, Judgment and Notice of Appeal*

INESA failed to appear and was tried in absentia. The court found in favor of Frank for breach of contract and violation of Labor Code section 1102.5 and awarded him $375,286.67 in

special damages, $220,000 in emotional distress damages and $180,633.32 in attorney fees and costs. The court dismissed EVOLV and Feilo without prejudice and entered judgment in favor of Frank against INESA and "[i]n favor, jointly and severally" of KBLED, All-In and Shaevel and ordered Frank to pay them $251,250 in attorney fees and $5,798.07 in costs.

Frank filed a timely notice of appeal.[4]

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864; *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

---

[4] Frank filed his notice of appeal on August 20, 2021, several weeks before the trial court entered judgment on September 10, 2021. We exercise our discretion to treat Frank's premature notice of appeal as timely filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2).)

9

When a defendant moves for summary judgment in a situation in which the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action.  Alternatively, the defendant may present evidence to "'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*); accord, *Regents of University of California v. Superior Court, supra*, 4 Cal.5th at p. 618 ["[a] defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action"]; Code Civ. Proc., § 437c, subd. (p)(2).)  "The moving party bears the burden of showing the court that the plaintiff has not established, and cannot reasonably expect to establish, the elements of his or her cause of action." (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705, internal quotation marks omitted; accord, *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720; see *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 ["the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence'"].)

Once the defendant's initial burden has been carried, the burden shifts to the plaintiff to demonstrate, by reference to specific facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 850.)

10

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof" at trial. (*Aguilar*, at p. 850; accord, *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 722.)

2. *Governing Law*

Frank's appeal challenges only the trial court's order granting summary judgment in favor of Shaevel, KBLED and All-In on his causes of action for breach of contract and unlawful retaliation. In the trial court Frank did not dispute that the employment agreement "was entered into . . . by and between plaintiff and defendant [EVOLV], as the sole identified employer" or that "[t]he Agreement was an integrated contract." His arguments on appeal center on Shaevel's, KBLED's and All-In's potential liability as joint employers with EVOLV or under theories of alter ego. Neither position has merit.

a. *Joint employers*

"Joint employment occurs when two or more persons engage the services of an employee in an enterprise in which the employee is subject to the control of both." (*Morales v. 22nd District Agricultural Association* (2018) 25 Cal.App.5th 85, 94, fn. 14, internal quotation marks omitted.) To be a joint employer an entity must have had the ability "(a) to exercise control over . . . wages, hours or working conditions, [or] (b) to suffer or permit [the] work, or (c) to engage, thereby creating a common law employment relationship." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 64.)

"'There is no magic formula for determining whether an organization is a joint employer. Rather, the court must analyze

11

myriad facts surrounding the employment relationship in question. No one factor is decisive." (*St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 311, cleaned up.) "Factors to be taken into account in assessing the relationship of the parties include payment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment.' . . . The most important factor is "'the defendant's right to control the means and manner of the workers' performance.""" (*Id.* at pp. 311-312.)

        b. *Alter ego*

"Alter ego is essentially a theory of vicarious liability under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages." (*Doney v. TRW, Inc.* (1995) 33 Cal.App.4th 245, 249.) "'Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.]' [Citation.] '[T]he

corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require.' [Citation.] Before a corporation's obligations can be recognized as those of a particular person, the requisite unity of interest and inequitable result must be shown. [Citation.] These factors comprise the elements that must be present for liability as an alter ego." (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 411; see *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1341 ["'when the corporate form is used to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners'"].)

On occasion, courts have recognized "reverse veil piercing," a situation in which an outside creditor seeks "to satisfy the debt of an individual through the assets of an entity of which the individual is an insider." (*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221 [limited liability company may be added as a judgment debtor where the liable defendant was the sole shareholder of the limited liability company and where the interest of justice required disregarding the limited liability company as a separate legal entity]; *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1513 ["[s]ome courts have recognized a variant of the alter ego doctrine, called third party or 'outside' reverse piercing of the corporate veil, by which the corporate veil is pierced to permit a third party creditor to reach corporate assets to satisfy claims against an individual shareholder"].) However, in cases involving a corporation, as opposed to a limited liability company, "a third party creditor

13

may not pierce the corporate veil to reach corporate assets to satisfy a shareholder's personal liability." (*Postal Instant Press,* at pp. 1512-1513.)

3. *Summary Judgment Was Properly Granted in Favor of Shaevel*

As discussed, Frank conceded in the trial court—and does again on appeal—that Shaevel was not the alter ego of EVOLV. However, as he did in the trial court, on appeal Frank argues there are disputed issues of material fact that could justify application of reverse veil piercing to find EVOLV is the alter ego of Shaevel, which would make EVOLV vicariously liable for Shaevel's actions against Frank.

In support of this argument Frank notes only that Shaevel and his son wrote checks directly to EVOLV for its initial capitalization and the two Shaevels and Merino were the owners of All-In. Frank fails to cite, let alone discuss, any authority that would suggest reverse veil piercing is appropriate based on those minimal facts. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see also *In re A.C.* (2017) 13 Cal.App.5th 661, 672.)

Even if not forfeited, the argument lacks merit. Reverse veil piercing does not apply here because EVOLV was incorporated and owned by All-In and INESA; Shaevel was not a shareholder of EVOLV. (See *Postal Instant Press, Inc., supra,* 162 Cal.App.4th at pp. 1512-1513.) More fundamentally, whether EVOLV could be liable for actions taken by Shaevel— that is, EVOLV's potential status as Shaevel's alter ego—is immaterial and thus not a basis on which summary judgment

14

could be denied.  (See *Romero v. American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1203 ["'[t]he presence of a factual dispute will not defeat a motion for summary judgment unless the fact in dispute is a material one'"]; Cal. Rules of Court, rule 3.1350(a)(2) ["'[m]aterial facts' are facts that relate to the cause of action . . . that is the subject of the motion and that could make a difference in the disposition of the motion"].)  EVOLV was indisputably Frank's employer.  If any entity or person was liable for breach of contract or unlawful retaliation it was EVOLV.  To defeat Shaevel's motion, Frank needed to present evidence that Shaevel was liable for EVOLV's purported misconduct, not vice versa.  As the trial court found, Frank failed to do that:  Although Frank argued in his reply brief in this court that triable issues of fact exist on the underlying issues of liability, he has presented no argument on appeal that Shaevel (or KBLED or All-In, for that matter) is directly liable for breaching the employment agreement or for retaliating against him.  Disputed issues about EVOLV's direct liability do not affect the trial court's decision to grant Shaevel's motion.

Frank's conclusory argument that disputed issues of material fact existed as to Shaevel's status as his joint employer is equally without merit.  Frank contends, without elaboration, that, because there is substantial evidence of alter ego, "it stands to reason a trier of fact can reasonably conclude that Respondents [Shaevel, KBLED and All-In] are the joint employers of Appellant."  That naked assertion is doubly flawed.

First, as discussed, it was conceded that Shaevel was not the alter ego of EVOLV, Frank's employer; and there was no evidence that reverse veil piercing can be applied to find EVOLV was Shaevel's alter ego, even if that had any bearing on Shaevel's

15

status as a joint employer.  Second, the tests for alter ego liability and joint employer status are entirely different.  Assuming A is the employee of company B, whether company C is A's joint employer depends on C's relationship to A (primarily C's right to control A's work performance), not, as in an alter ego evaluation, C's relationship to B (primarily whether there is a unity of interest between B and C).  Whether there is substantial evidence of alter ego tells us nothing about the sufficiency of the evidence for a joint employer finding.  And Frank fails to point us to any evidence in the record that creates a triable issue of material fact on that issue.  (See generally *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 ["[t]he reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived"]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011 ["[i]t is not the duty of a reviewing court to search the record for evidence on a point raised by a party whose brief makes no reference to the pages where the evidence can be found"].)

  4. *Frank's Joint Employer Argument Fails as to KBLED and All-In*

  Frank advances as to KBLED's and All-In's liability as joint employers the identical, minimalist it-stands-to-reason argument made with respect to Shaevel.  It fails for the same reason:  Evidence of alter ego liability, even if it existed, is not evidence of joint employer status.

16

5. *Frank Has Forfeited His Undeveloped and Conclusory Arguments Concerning Alter Ego Liability as to KBLED and All-In*

Arguing under the more conventional alter ego theory that KBLED and All-In were the alter egos of EVOLV and, therefore, liable for EVOLV's breach of contract and retaliatory actions, Frank lists 22 "material facts" that he asserts "could lead the trier of fact to find alter ego liability." But he fails to explain how those facts are material—that is, how they would support a finding that KBLED or All-In controlled EVOLV or were sufficiently interconnected to it to warrant disregarding EVOLV's corporate form. Again, it is not our task to create Frank's argument for him. (See *Meridian Financial Services, Inc. v. Phan, supra,* 67 Cal.App.5th at p. 684.) Further, in support of these 22 material facts in this court, Frank cited 37 pages from Shaevel's deposition as KBLED's person most knowledgeable. Yet Frank did not present that evidence in opposition to the motion for summary judgment; he filed it to support a motion for leave to file a fifth amended complaint (a motion filed after the trial court issued its summary judgment ruling). Because Frank failed to identify this evidence in the trial court on summary judgment, we will not consider it on appeal. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 ["[b]ecause this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion"]; *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1109; see also *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 608 [appellate court reviews propriety of ruling on summary judgment "based on the record before the trial court on summary judgment"].)

17

Frank now also contends that EVOLV, KBLED and All-In are effectively the same company, relying on the definition of "Corporation" found in EVOLV's shareholders' agreement. Based on this definition, Frank urges us to conclude EVOLV, KBLED and All-In were employers of Frank and alter egos of one another—a theory, when properly developed, generally referred to as the single-enterprise rule.[5] Frank did not make this argument in the trial court, and it is forfeited. (See *Meridian Financial Services, Inc. v. Phan, supra,* 67 Cal.App.5th at p. 704 [arguments deemed forfeited where plaintiffs' "opposition separate statement does not set forth all of the facts on which they base their current argument" on appeal]; *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 ["'possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal'"]; *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873 [issue not asserted in opposing motion for summary judgment forfeited; were doctrine not applied, losing parties "could attempt to embed grounds for reversal on appeal into every case by their silence"].)[6]

---

[5] Under the single-enterprise rule a "sister or affiliated" company can be held liable under the alter ego doctrine when a court finds that, as a matter of equity, the organization has been operating as a single enterprise, considering the relevant factors. (See, e.g., *Troyk v. Farmers Group, Inc.*, *supra*, 171 Cal.App.4th at p. 1341.)

[6] Even were we to consider the merits of this argument for the first time on appeal, Frank fails to explain why a defined term plucked from EVOLV's shareholders' agreement applies in the context of his employment-related claims or why the

For the same reason Frank has forfeited the additional arguments regarding alter ego he raises for the first time on appeal:  KBLED and All-In are alter egos of Shaevel, and All-In is an alter ego of KBLED.  In any event, as discussed, possible alter ego relationships between or among Shaevel, KBLED and All-In were immaterial absent evidence that one of those parties was an alter ego of EVOLV.

**DISPOSITION**

The judgment is affirmed.  Shaevel, KBLED and All-In are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

definition of "Company" in Frank's employment contract as simply "EVOLV Integrated Technologies Group Inc." does not control.